Gary BRADLEY, Petitioner–Appellee,

v.

W.A. DUNCAN, Warden, Respondent–Appellant.

No. 01–55290.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2002.

Filed Dec. 24, 2002.

Jeffrey S. Kross, Oakland, CA, for the petitioner-appellee.

J. Michael Lehmann (argued), Corey J. Robins, Office of the Attorney General of the State of California, Los Angeles, CA, for the respondent-appellant.

Before FERGUSON, TASHIMA, and Graber, Circuit Judges.

Opinion by Judge FERGUSON; Dissent by Judge GRABER.

## OPINION

FERGUSON, Circuit Judge:

Warden William A. Duncan ("the State") appeals the District Court's conditional grant of Defendant/Petitioner Gary Bradley's ("Bradley") 28 U.S.C. § 2254 petition for a writ of habeas corpus challenging his conviction on the grounds that the state trial court's refusal to instruct the jury on the defense of entrapment violated his federal due process rights. The District Court adopted the recommendations of the Magistrate Judge, who found that the refusal to instruct effected prejudicial constitutional error, and that the California appellate court's denial of his claim was contrary to and involved an objectively unreasonable application of controlling federal law. We affirm the District Court's conditional grant of habeas relief.

Defendant/Appellee Gary Bradley ("Bradley") was arrested and charged with one count of selling cocaine in violation of California Health and Safety Code section 11352(a). Bradley's only defense at trial was that he was entrapped by the police into committing the offense.

At the conclusion of trial, the state trial court instructed the jury on the defense of entrapment pursuant to the defense's request. The instructions are set forth in the appendix to this opinion. During deliberation, the jury requested two clarifications regarding the entrapment instructions. After three days of deliberations, the jury still could not reach a verdict as to Bradley's guilt, and a mistrial was declared.

Bradley was retried before another state court judge. During the second trial, Bradley's testimony from the first trial was read into evidence during the prosecution's case-in-chief. Bradley had admitted that he facilitated the sale of cocaine, but testified that his sole purpose was to help

an unwitting police agent, Jose de Jesus Flores, who was suffering greatly due to drug withdrawal. At the close of evidence, the defense again requested an entrapment instruction. This time, the trial court denied the request without explanation.

Not surprisingly, the jury found Bradley guilty. He was sentenced to twenty-five years to life imprisonment pursuant to California's "three strikes" provisions. CAL. PEN. CODE §§ 667(b)-(i), 1170.12(a)-(d).[1]

The state claims that Bradley did not present sufficient evidence to deserve an instruction on entrapment. Its reasoning is simply fallacious. The evidence presented at the first trial warranted an instruction. The same evidence was adduced at the second trial. Yet, Bradley was deprived of an instruction on entrapment at his second trial.

To demonstrate why the District Court was correct in granting habeas corpus relief, we review the facts underlying Bradley's arrest. Next, we analyze these facts in light of the governing state law and find that Bradley was entitled to an entrapment instruction. Third, we determine that the failure to instruct on Bradley's only defense violated his due process right to present a full defense. Finally, we conclude that Bradley is entitled to habeas relief under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA").

### A. Factual Background

On January 8, 1996, while conducting an undercover narcotics operation, Officers Servando Pena and Melissa Town observed Jose de Jesus Flores standing on the sidewalk. Officer Pena pulled the unmarked car over and motioned for Flores to approach the car. Flores came over to

---

1. The prior convictions were for a 1980 and a 1988 burglary.

the car, smelling of alcohol. Officer Pena asked Flores if he could "hook" him up with twenty dollars worth of cocaine. Flores stated that he did not have any, but he would take the officers to obtain drugs. Flores got into the car and directed Officer Pena to drive toward a particular intersection, but he did not state that he was looking for any specific person.

Officer Pena knew something was wrong with Flores and believed that he was going through drug withdrawal. Flores was pale and shaking, his head kept moving back and forth, and he said he desperately needed cocaine. As they approached the intersection, Flores spotted Bradley, whom he had previously seen in passing, and called out for him to stop. Flores told Officer Pena to pull over, exited the vehicle, and vomited audibly in front of the officers and Bradley. Moments later, he approached Bradley.

Bradley observed that Flores was going through withdrawals—he looked "pinkish, yellowish, sick"; he smelled like vomit; he was "tweaking and twitching"; and he was "shaking, like . . . a junky dude." Flores implored him to help him "get something." Bradley asked him what he meant, and Flores responded "I'm hurting. I need a fix." Flores begged Bradley for drugs, asking repeatedly "Can you help me?" Flores told Bradley he was ill and appealed to him saying, "Please, please, big man, would you help me out?"

Bradley finally agreed but told Flores to wait, stating: "I have to go see because I don't, you know, do it. I know people up and down the street that does it, but I don't do it." Bradley then rode his bicycle up the street where drug dealers congregated. The officers and Flores followed him in the vehicle. When they reached the designated intersection, Flores gave Bradley the officers' twenty-dollar bill. However, Bradley did not locate anyone selling drugs and returned the money.

Bradley then proceeded homeward on his bicycle, but he stopped upon observing co-defendant Tyrone Jennings walking towards a liquor store. Bradley caught up with Flores and the officers and told them to meet him at the liquor store. Bradley obtained twenty dollars from the officers, exchanged it for cocaine from Jennings, and delivered the cocaine to the officers and Flores. Bradley was arrested minutes later. No drugs were found on his person.

## B. Entrapment under California Law

■ The purpose of the entrapment defense is to deter impermissible police conduct. *People v. Barraza*, 23 Cal.3d 675, 153 Cal.Rptr. 459, 591 P.2d 947, 956 n. 5 (1979); *People v. Holloway*, 47 Cal.App.4th 1757, 55 Cal.Rptr.2d 547, 551 (1996), *overruled on other grounds by People v. Fuhrman*, 16 Cal.4th 930, 67 Cal.Rptr.2d 1, 941 P.2d 1189, 1199 n. 11 (1997). In adopting an objective test of entrapment, the California Supreme Court reasoned, "the function of law enforcement manifestly 'does not include the manufacturing of crime.'" *Barraza*, 153 Cal.Rptr. 459, 591 P.2d at 954 (quoting *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)).

■ It is permissible for the police to offer "the simple opportunity to act unlawfully," by the use of decoys or otherwise. *Id.* at 955. However, "it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." *Id.* It is also impermissible for the police or their agents to conduct themselves in a manner that would induce a normally law-abiding person "to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose." *Id.*

 Entrapment is a jury question because of "its potentially substantial effect on the issue of guilt." *Id.* at 956 n. 6; *see also People v. Lee,* 219 Cal.App.3d 829, 268 Cal.Rptr. 595, 598 (1990) ("Entrapment is ordinarily a fact question.") (citations omitted). The defendant is entitled to an entrapment instruction if he presents sufficient evidence for a reasonable jury to conclude that he was entrapped. *See People v. Watson,* 22 Cal.4th 220, 91 Cal. Rptr.2d 822, 990 P.2d 1031, 1032 (2000) (citing substantial evidence standard from *People v. Flannel,* 25 Cal.3d 668, 160 Cal. Rptr. 84, 603 P.2d 1, 10 (1979)). "Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." *Flannel,* 160 Cal. Rptr. 84, 603 P.2d at 10 (internal quotation marks and citation omitted).

 In this case, the California Court of Appeal found that Bradley was not entitled to an entrapment instruction under California law. However, its decision involved "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Moreover, it failed to view the evidence in the light most favorable to Bradley.

 First, the California Court of Appeal's decision was unreasonable in light of the record. The court characterized the police conduct as "an ordinary, run-of-the-mill, undercover drug operation in which a decoy was used." In so doing, it stated that "[n]either officer badgered, cajoled, nor did any other affirmative act likely to induce a normally law-abiding person to commit the crime."

Although the California Court of Appeal was correct that neither Officer Pena nor Officer Town badgered, cajoled, or importuned Bradley personally, their decoy did. The court overlooked Flores' actions in determining that the facts did not support an entrapment instruction. Yet, a decoy who is manipulated by the police also constitutes a police agent "for purposes of the entrapment defense, even [if] the third party remains unaware of the law enforcement object." *People v. McIntire,* 23 Cal.3d 742, 153 Cal.Rptr. 237, 591 P.2d 527, 530 (1979).

Flores, the unwitting police agent, targeted Bradley individually and begged him for drugs. Flores' appeal, "Please, please, big man, would you help me out?"—despite Bradley's statements that he neither had drugs nor sold them—could certainly be found by a jury to constitute "badgering" or "cajoling." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 161 (1966) (defining "badger" as to "pester . . . in a manner likely to confuse, annoy, or wear down"); *id.* at 313 (defining "cajole" as "to persuade with deliberate flattery esp[ecially] in the face of reasonable objection or reluctance"). In light of the urgency of Flores' requests, his conduct also constituted "importuning" in the ordinary meaning of the term. *Id.* at 1135 (defining "importune" as "to press or urge with . . . unreasonable requests").

Moreover, the California Court of Appeal's determination that the police merely offered the opportunity to act illegally was unreasonable in light of the record. Officers Pena and Town chose as their "hook" a drug addict who was going through withdrawals and was very ill. This was not a case in which the police merely used an underage decoy to purchase alcohol, *see Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.,* 7 Cal.4th 561, 28 Cal. Rptr.2d 638, 869 P.2d 1163 (1994), or to respond to an ad soliciting sex with a female of any age. *See People v. Reed,* 53 Cal.App.4th 389, 61 Cal.Rptr.2d 658 (1996). This was a case in which the police used a decoy whose physical suffering would appeal to the sympathies of most people.

■ Second, the California Court of Appeal failed to resolve its doubts as to whether a normally-law-abiding person would have been induced to commit the crime out of sympathy for Flores in favor of Bradley. *See Flannel,* 160 Cal.Rptr. 84, 603 P.2d at 10. The court denied Bradley's claim, reasoning that "the average person would not ... purchase illegal drugs to aid a stranger, even if the stranger appeared to be a drug addict going through withdrawal." [2] What a normally-law-abiding person would do under the circumstances should have been left to the jury. A reasonable jury could find that a normally-law-abiding person would feel sympathy for Flores in his desperate state and decide to help him obtain drugs to relieve his suffering.

The Court of Appeal compounded its error by speculating that a normally-law-abiding person confronted by an evidently ill drug-addicted stranger in the throes of withdrawal would not purchase drugs for Flores, but would opt for a legal alternative. Of course, calling the police is an alternative to acquiescing in illegal activity, and it is conceded that taking a drug addict to a clinic is preferable to enabling his drug addiction. But one could always speculate about a legal alternative to the illegal action ultimately taken.[3]

A normally-law-abiding person does not always take the high road in the face of pressures or inducements by the police or their agents. As Justice Frankfurter observed in *Sherman:* "Human nature is weak enough and sufficiently beset by temptations without government adding to them and generating crime." 356 U.S. at 384, 78 S.Ct. 819 (Frankfurter, J., concurring). The state ignores the purpose of the entrapment defense, which is to curb unsavory police conduct. Instead of focusing on the impermissible police conduct, the state chooses to blame Bradley and to point out what he should have done differently. This argument is circuitous and leaves no situation where the defendant can assert entrapment as a defense.

Moreover, in faulting Bradley for failing to call the police or take Flores to a treatment center, the state turns a blind eye to the fact that the officers did not do so either. Not only did the officers in this case fail to help Flores, they isolated him from any potential assistance, using him as a decoy and then arresting him as a co-defendant in this case. If anyone in this case had a duty to assist Flores, it was the officers, not Bradley. This is especially true because Bradley was on a bicycle (and could not transport Flores anywhere), whereas the officers were in a vehicle and had control over Flores as a passenger. However, instead of taking him to get help, the officers decided to exploit Flores' addiction as a tool to induce another person's participation in a drug sale. Under *Barraza* and its progeny, this is impermissible.

■ It is important to remember that at Bradley's first trial, the trial judge found that the evidence presented required that the jury be given an entrapment instruc-

---

2. The California Court of Appeal's statement that Flores was a "stranger" is also unreasonable in light of the record. At the very least, Flores was an acquaintance. The record reflects that Bradley had seen Flores in passing. Moreover, Officer Town testified at trial that Bradley assured the officers that he would not 'rip them off' because Flores knew where to find him. Thus, Flores was not a stranger to Bradley.

3. Further, the state's reliance on *People v. Graves,* 93 Cal.App.4th 1171, 113 Cal.Rptr.2d 708 (2001), for the proposition that Bradley should have chosen a "lawful alternative," is misplaced. In that case, the defendant responded illegally to a legal request. *Id.* at 713. Here, Bradley acquiesced in an illegal request.

tion. The evidence presented at the second trial was *exactly* the same as the first trial, yet the second trial judge refused to give the instruction. As the District Court below observed:

> By refusing to instruct the jury on entrapment, the trial judge essentially left the jury with petitioner's confession to the offense, without ever allowing them to consider petitioner's preclusive defense. By rejecting petitioner's request for an entrapment instruction, the trial court effectively deprived petitioner of his only defense. (ER 77)

This kind of manipulation of the jury is simply not permissible. "The trial judge is . . . barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 573, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

Moreover, when one judge determines, as a matter of law and fact, that the evidence requires the giving of an entrapment instruction, and no additional evidence to the contrary is proffered at a subsequent trial, the second judge may not simply ignore the findings of the first. "It is a fundamental principle of jurisprudence . . . that a question of fact or of law distinctly put in issue and directly determined by a[criminal or civil] court of competent jurisdiction cannot afterwards be disputed between the same parties." *Frank v. Mangum*, 237 U.S. 309, 334, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (internal citation omitted). California recognizes this application of the law of the case doctrine. The California Court of Appeal recently held that a superior court judge lacked the authority to vacate and redetermine the bail setting determination of another superior court judge. *In re Alberto*, 125 Cal.Rptr.2d 526, 2002 WL 31116128, slip. op.11205 (Ct.App. 2002). The decision reasoned that "for one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court." *Id.* at 11206. *See also, People v. Woodard*, 131 Cal.App.3d 107, 111, 182 Cal.Rptr. 254 (1982). In the instant case, the second judge simply ignored the findings of the previous judge, without even bothering to assert that the earlier decision was erroneous or that the circumstances of the case had changed. This kind of unauthorized second-guessing is impermissibly arbitrary and can amount to a violation of Due Process.

## C. Due Process Violation

The failure to instruct the jury on Bradley's defense theory of entrapment was not simply a state law error. It also effected a violation of Bradley's due process rights.

The Supreme Court has held that "[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (citation omitted). We have applied this standard to habeas petitions arising from state convictions. *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir.1999) ("It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case.").

The failure to instruct the jury on entrapment deprived Bradley of his due process right to present a full defense. The Supreme Court has held: "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a *meaningful* opportunity to present a complete

defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (emphasis added).

Thus, the state court's failure to correctly instruct the jury on the defense may deprive the defendant of his due process right to present a defense. *See Barker v. Yukins*, 199 F.3d 867, 875–76 (6th Cir. 1999) (granting habeas relief under AEDPA because the erroneous self-defense instruction deprived the defendant's of a "meaningful opportunity to present a complete defense") (relying on *Trombetta*, 467 U.S. at 485, 104 S.Ct. 2528), *cert. denied*, 530 U.S. 1229, 120 S.Ct. 2658, 147 L.Ed.2d 273 (2000). This is so because the right to present a defense "would be empty if it did not entail the further right to an instruction that allowed the jury to consider the defense." *Tyson v. Trigg*, 50 F.3d 436, 448 (7th Cir.1995).

In this case, the refusal to instruct on entrapment deprived Bradley of his only defense and, as a result, of due process. Bradley testified at his first trial that he bought the cocaine for Flores and explained that he did so out of concern for Flores' well-being and sympathy for his plight. At the second trial, the prosecution read Bradley's testimony into the evidence.

During closing argument, the prosecutor pointed to the portion of the record in which Bradley had confessed to the crime. He admonished the jury not to consider the evidence that Bradley had acted as a "Good Samaritan" or that he had committed the crime out of sympathy for Flores. He also reminded the jury of the court's instruction not to acquit on the basis of "sympathy" for Bradley. Defense counsel argued that the officers' ."tactics" of manipulating a drug addict going through withdrawals was "despicable" and is not "something that should be done." However, because of the court's refusal to instruct on entrapment, he could not point to a legal grounds on which the jury could acquit Bradley if it agreed.[4]

 Under these circumstances, the failure to instruct on entrapment prevented Bradley from presenting his full defense. Accordingly, due process was violated. Nevertheless, because the failure to instruct on entrapment was a trial error, Bradley is entitled to relief only if he can show prejudice. *Cal. v. Roy*, 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (explaining harmless-error analysis). Prejudice is shown for purposes of habeas relief if the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 6, 117 S.Ct. 337 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Moreover, we must grant the petition if we are " 'in grave doubt as to the harmlessness of an error.' " *Id.* (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)).

As aforementioned, Bradley presented ample evidence supporting the giving of the entrapment instruction. Moreover, we need only look at the differing results of the two trials to find that the failure to so instruct had a substantial and injurious effect on the jury verdict. In the first trial, an instruction was given, and a mis-

---

4. Use of Bradley's testimony from the first trial, in which an entrapment instruction was given, against him in the second trial, in which no entrapment instruction was given, presents an additional element of unfairness. Presumably, Bradley elected to testify at the first trial to support his entrapment defense. If he knew that no entrapment instruction would be given, he may well have elected to stand on his Fifth Amendment right not to testify. Thus, the refusal to give an entrapment instruction at the second trial, in effect, sandbagged Bradley into testifying and virtually confessing guilt, even though no entrapment instruction was given.

trial was declared after three days of deliberation and two clarifications on the defense. In the second trial, the same evidence was presented, but the instruction was not given. A guilty verdict was the result. In addition, in his appeal to the California Court of Appeals, Bradley filed declarations from two jurors on the second jury, both of whom stated that "the jury verdict (or the jury's ability to reach a unanimous verdict) would have been different if these [entrapment] instructions had been given."

Under these circumstances, the failure of the trial court to instruct the jury as to Bradley's entrapment defense, causes at least a "grave doubt as to the harmlessness of the error." *O'Neal,* 513 U.S. at 437, 115 S.Ct. 992. Thus, Bradley has sufficiently shown prejudice and is entitled to relief on his due process claim.

## D. Habeas Relief under AEDPA

■ Having concluded that Bradley's due process rights were violated, we turn to the issue whether he has fulfilled the requirements of AEDPA. As previously discussed, the California Court of Appeal's decision that Bradley was not entitled to an entrapment instruction involved an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). However, it is the due process violation, not the state law error, that triggers our habeas relief.

Because the California Court of Appeal did not address Bradley's due process claim, we must conduct an independent review of the record to determine "whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." *Thomas v. Hubbard,* 273 F.3d 1164, 1170 (9th Cir. 2001) (as amended) (quoting *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000)).

■ We have held that a state court decision must be reversed as involving an "unreasonable application" of clearly established federal law when we have a "firm conviction" that the state court erred. *Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000) (adopting a "clear error" standard for habeas review under AEDPA), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). Contrary to the dissent's suggestion, we accept the principles mandated by the Supreme Court in *Woodford v. Visciotti,* 123 S.Ct. 357, 154 L.Ed.2d 279, 2002 WL 31444314 (2002) (per curiam) and *Early v. Packer,* 123 S.Ct. 362, 154 L.Ed.2d 263, 2002 WL 31444316 (2002) (per curiam), requiring that the state court decision reflect an "objectively unreasonable" application of federal law. However, the record is clear that the California Court of Appeal's decision *was* an "objectively unreasonably" application of federal law. The Court of Appeal failed to recognize Bradley's right to present a complete and meaningful defense to the jury under the principles set out in *Mathews* and *Trombetta.* It failed to consider the facts relevant to the due process prejudice prong, including the undisputed evidence that jurors in the second trial would not have convicted the defendant if the entrapment instruction had been given. It failed to explain why the second judge could unilaterally ignore the first trial judge's findings of fact and conclusion of law regarding the entrapment instructions and not compose even a single sentence to explain away the law of the case doctrine. It is clear that the California Court of Appeal's failure to address these issues constituted an objectively unreasonable determination of both the law and the facts.

The dissent would dismiss Bradley's habeas petition on the basis that he "has cited no United States Supreme Court case ... that would require the giving of an entrapment instruction in a state-criminal trial when there is insufficient evidence

to support such an instruction under state law." Dissent at 27 (citing *Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir.1993)). However, no such case need be cited here. As shown above, Bradley more than sufficiently supported his defense theory of entrapment, and the fact that the entrapment instruction was given in his first trial is further proof of this.

The dissent misconstrues the nature of our inquiry under AEDPA. Bradley need not produce a "spotted calf" on the precise issue at hand to warrant habeas relief. *See Van Tran*, 212 F.3d at 1154 & n. 16 ("AEDPA does not require an on-point Supreme Court case for us to reverse...."). Rather, it is sufficient that the due process violation involved here offends the principles previously enunciated by Supreme Court precedent and reaffirmed by our case law. *See id.; see also Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002) ("The [Supreme] Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent.") (citing *Williams v. Taylor*, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

The District Court was correct to grant habeas relief.

Affirmed.

## Appendix

CALJIC No. 4.60 provides:

It is a defense to a criminal charge that the commission of the alleged criminal act, was induced by the conduct of law enforcement agents or officers [or persons acting under their direction, suggestion or control] when the conduct would likely induce a normally law-abiding person to commit the crime. [¶] To establish this defense the defendant has the burden of proving by a preponderance of the evidence that the conduct of the law enforcement agents or officers[or persons acting under their direction, suggestion, or control] would likely induce a normally law-abiding person to commit the crime.

CALJIC No. 4.61 provides:

In deciding whether this defense has been established, guidance will generally be found in the application of one or both of two principles. First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the criminal other than ordinary criminal intent, entrapment will be established. An example of this type of conduct would be an appeal by the police that would induce a normally law-abiding person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law abiding person will likewise constitute entrapment. This conduct would include, for example, a guarantee that the act is not illegal or the crime will go undetected, an offer of exorbitant consideration, or any similar enticement. [¶] Finally, while the inquiry must focus primarily on the conduct of the law enforcement agent, that conduct is not to be viewed in a vacuum; it should also be judged by the effect it would have on a normally law-abiding person situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this purpose, for example, are the transactions preceding the crime, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission. [¶][Matters such as the character of the defendant, [his], [her] predisposition to commit the crime, and [his][her] subjective intent are not relevant to the determination of the question of whether entrapment occurred.]

**1102**

CALJIC No. 4.61.5 provides:

It is permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to provide opportunity for the commission of a crime including reasonable, though restrained, steps to gain the confidence of suspects. It is not permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to induce the commission of a crime by overbearing conduct such as badgering, coaxing or cajoling, importuning, or other affirmative acts likely to induce a normally lawabiding person to commit the crime.

GRABER, Circuit Judge, dissenting:

I respectfully dissent. The majority fails to adhere to our standard of review. The California courts made no factual error and no error of California law. Federal law does not, independently, require an entrapment instruction in a state-court criminal trial when there is insufficient evidence to support it as a matter of state law. Accordingly, I would reverse the district court's conditional grant of habeas relief to Petitioner.

The Supreme Court of the United States has just chastised this court, in the strongest possible terms, for substituting our judgment for that of a state court on matters of federal law, including legal issues that involve an interpretation and application of facts. *Woodford v. Visciotti*, — U.S. —, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam); *Early v. Packer*, — U.S. —, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). We have even less justification for substituting our judgment for that of a state court on matters of its own state law. Indeed, we wholly lack authority to second-guess a state court on a question of state law. Yet that is precisely what the majority does here, in clear

contravention of both AEDPA and the Supreme Court's interpretation of it.

Petitioner was convicted in state court on one count of selling cocaine in violation of California Health & Safety Code § 11352(a). At trial, he argued that he had been entrapped by the police officers' use of a decoy who was obviously suffering symptoms of withdrawal from drugs. Petitioner contended that the decoy's plight induced him to commit a crime that he would not otherwise have committed. He requested an entrapment instruction, which the state trial court refused to give. On appeal, the California Court of Appeal held that the trial court properly declined to instruct the jury on entrapment because Petitioner had not presented substantial evidence in support of that theory:

Here, there was no substantial evidence to support entrapment instructions. This was an ordinary, run-of-the-mill, undercover drug operation in which a decoy was used. The officers used Flores as a "hook" in locating a source for cocaine; [Petitioner] expressed his willingness to assist in finding cocaine, and [Petitioner] took actions toward accomplishing that goal. He located a source for the drugs and exchanged money for the drugs. The police did not conduct themselves improperly. Neither officer badgered, cajoled, nor did any other affirmative act likely to induce a normally law-abiding person to commit the crime. [Petitioner] was simply offered the opportunity to commit the crime.

. . . .

. . . [T]he average person would not, as[Petitioner] contends, purchase illegal drugs to aid a stranger, even if the stranger appeared to be a drug addict going through withdrawal. . . . (*Cf. People v. Lee* (1990) 219 Cal.App.3d 829, 268 Cal.Rptr. 595[sailor working with police befriends drug dealer to assist in gain-

ing dealer's confidence; such casual, brief, non-intimate acquaintances does not constitute entrapment]; compare with *People v. McIntire* [ (1979) ] 23 Cal.3d 742, 153 Cal.Rptr. 237, 591 P.2d 527 [facts sufficient to raise entrapment defense when defendant acquiesces to strong and persistent pressure applied by police through defendant's younger brother based upon sympathy aroused by family problems].)

*People v. Bradley,* No. B112640 (Cal. Ct. App. filed Nov. 17, 1998) (footnotes omitted). The California Supreme Court denied review in an unpublished decision.

Petitioner then initiated this federal habeas action. The district court held that the California courts erred as a matter of California law when they concluded that Petitioner had failed to present sufficient evidence to be entitled to a jury instruction on entrapment. Because Petitioner had been entitled to the instruction under state law, the court concluded, the state court's failure to give the instruction violated Petitioner's due process rights. The majority agrees and, by doing so, essentially reviews de novo questions of state law.

We may grant habeas relief under 28 U.S.C. § 2254(d) only if the decision of the California Court of Appeal (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In reviewing the petition, we are "bound by the state court's interpretations of state law," and we must presume the correctness of the state court's factual findings in the absence of "clear and convincing evidence" to the contrary. *Bains v. Cambra,* 204 F.3d 964, 972 (9th Cir.), *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000); 28 U.S.C.

§ 2254(e)(1). Additionally, the standard for finding an unreasonable application of federal law is a high one. *See Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). The majority's opinion neither presumes the correctness of the state court's factual findings nor holds itself bound by the state court's interpretation of state law.

Here we are reviewing the California Court of Appeal's holding that, *as a matter of California law,* Petitioner failed to present sufficient evidence to be entitled to an instruction on entrapment. Therefore, we are bound by that holding unless it involves "an unreasonable determination of the facts in light of the evidence presented" or is contrary to federal law. 28 U.S.C. § 2254(d). "A state court has the last word on the interpretation of state law." *Mendez v. Small,* 298 F.3d 1154, 1158 (9th Cir.2002).

The majority's contention that the California Court of Appeal's determination was "an unreasonable determination of the facts in light of the evidence presented" is flawed. The majority identifies two "factual" conclusions made by the California Court of Appeal that the majority finds unreasonable: (1) the Court of Appeal determined that "[n]either officer badgered, cajoled, nor did any other affirmative act likely to induce a normally law-abiding person to commit the crime," maj. op. at 1096; and (2) the "Court of Appeal failed to resolve its doubts as to whether a normally law-abiding person would have been induced to commit the crime out of sympathy for Flores in favor of [Petitioner]," maj. op. at 1097. Neither of those claimed

errors is sufficient to merit relief under our standard of review, as the majority apparently realizes when it states that "it is the due process violation, not the state law error, that triggers our habeas relief." Maj. op. at 1100.

Under California law, as the majority concedes, maj. op. at 1095–96, a defendant must present substantial evidence of entrapment to be entitled to a jury instruction on the defense. *People v. Watson*, 22 Cal.4th 220, 91 Cal.Rptr.2d 822, 990 P.2d 1031, 1032 (2000). Substantial evidence is "evidence enough to deserve consideration by the jury, i.e., evidence from which a jury composed of reasonable men could have concluded" that the defendant was entrapped. *People v. Flannel*, 25 Cal.3d 668, 160 Cal.Rptr. 84, 603 P.2d 1, 10 (1980) (citation and internal quotation marks omitted).

"In California, the test for entrapment focuses on the police conduct and is *objective*." *Watson*, 91 Cal.Rptr.2d 822, 990 P.2d at 1032 (emphasis added); *see also People v. Barraza*, 23 Cal.3d 675, 153 Cal. Rptr. 459, 591 P.2d 947, 954–55 (1979).[1] To be entitled to an instruction on entrapment, a defendant must present substantial evidence that "the conduct of the law enforcement agent [was] likely to induce a normally law-abiding person to commit the offense." *Id.* at 955. The law *"presume[s] that such a person would normally resist the temptation to commit a crime* presented by the simple opportunity to act unlawfully." *Id.* (emphasis added). The question is whether "the police or their agents . . . pressure[d] the suspect by overbearing

conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." *Id.* "[T]he rule is clear that ruses, stings, and decoys are permissible stratagems in the enforcement of criminal law, and they become invalid only when badgering or importuning takes place *to an extent and degree* that is likely to induce an otherwise law-abiding person to commit a crime." *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.*, 7 Cal.4th 561, 28 Cal.Rptr.2d 638, 869 P.2d 1163, 1167 (1994) (emphasis added) (citation and internal quotations omitted). An appeal to a defendant's sympathy by police can result in entrapment but only if that appeal would cause the "normally law-abiding person" to turn to crime. *Barraza*, 153 Cal.Rptr. 459, 591 P.2d at 955. Whether the police conduct at issue constitutes entrapment is "judged by the effect it would have on a normally law-abiding person situated in the circumstances of the case at hand." *Id.*

Viewed in the light most favorable to Petitioner, the evidence shows that he was approached by a police decoy who was demonstrating overt signs of drug withdrawal. The decoy vomited just before approaching Petitioner, smelled like vomit, appeared "pinkish, yellowish, sick," and was "tweaking and twitching." The decoy asked Petitioner to "get something" and to help him get a fix because he was hurting. He repeatedly told Petitioner that he was really ill and needed drugs. Petitioner had seen the decoy before, but did not know him.[2] Nevertheless, Petitioner de-

---

1. Notably, one of Petitioner's requested instructions, CALJIC 4.61, is entitled "Entrapment—Objective Test—Guidance" and cautions, among other things, that such matters as the defendant's "subjective intent are not relevant to the determination of the question of whether entrapment occurred."

2. The majority quarrels with the state court's reference to Flores as a "stranger." Maj. op. at 1097 n. 2. The California Court of Appeal's distinction between "casual, brief, non-intimate acquaintances" on the one hand and "family" ties on the other shows that the court understood, as the majority puts it, that Petitioner and Flores were "acquaintance[s]"

cided to purchase drugs and provide them to the decoy.

It is clear that the decoy's withdrawal symptoms appealed to Petitioner's sympathy and, I expect, would appeal to the sympathy of nearly every normally law-abiding person. However, that fact, standing alone, is insufficient to permit an entrapment defense under California law. Instead, the appeal to sympathy must have been to an extent and degree that were likely to cause a normally law-abiding person to buy or sell drugs. As the California Court of Appeal permissibly and reasonably concluded, a normally law-abiding person confronted by an ill, drug-addicted stranger (or casual acquaintance) in the throes of withdrawal—like the decoy in this case—would not respond by providing illegal drugs to him. That conclusion is particularly reasonable in view of the fact that there are several obvious lawful alternatives available to help a manifestly ill person, such as calling 911 or taking the person to a clinic. *Cf. People v. Graves*, 93 Cal.App.4th 1171, 113 Cal.Rptr.2d 708, 712–13 (2001) (holding that entrapment did not apply in part because lawful responses were available to a request for help made at the behest of law enforcement, reasoning that a "normally law-abiding person" would opt for the lawful response).

In short, the California courts reasonably concluded that Petitioner had not presented enough evidence to support the giving of state-law entrapment instructions, because the facts, even when viewed in favor of Petitioner, did not show government conduct likely to induce a normally law-abiding person to break the law by selling cocaine. Even if we disagree with the California courts, we are obliged to give effect to their reasonable determina-tion. *Packer*, —— U.S. at ——, 123 S.Ct. at 366.

The majority explicitly rests its holding on the conclusion that Petitioner's due process rights were violated by the California courts' refusal to provide an entrapment instruction. Maj. op. at 1100. It appears that the majority finds two distinct due process violations: (1) Petitioner was entitled to an entrapment defense as a matter of constitutional law even though he was *not* entitled to it under state law; and (2) the judge in the second trial was not permitted to give different jury instructions than the judge in the first trial, which ended in a mistrial. The majority fails to cite any persuasive authority for the proposition that Petitioner was denied due process.

Petitioner has cited no United States Supreme Court case, and I am aware of none, that would require the giving of an entrapment instruction in a state-court criminal trial when there is insufficient evidence to support such an instruction under state law. *Cf. Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir.1993) (per curiam) (holding that a federal criminal defendant's entitlement to an entrapment instruction is not constitutionally based and that Arizona, consistent with due process, could require that a state defendant "admit all of the elements of each offense" as a prerequisite to receiving a jury instruction on entrapment); *see also United States v. Russell*, 411 U.S. 423, 433, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (stating that the entrapment defense itself "is not of a constitutional dimension"). Indeed, the majority recognizes that a due process violation occurs from the failure to instruct as to a recognized defense only in the event that " 'there exists evidence sufficient for a

who had at least seen each other "in passing." *Id.* The state court made no factual

error in this respect.

reasonable jury to find'" in accordance with the proffered defense. Maj. op. at 1098 (quoting *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)).

The majority recites the proposition that "the state court's failure to correctly instruct the jury on the defense may deprive the defendant of his due process right to present a defense." Maj. op. at 1099. Relying on that principle, the majority states that the California courts' refusal to give an entrapment instruction denied Petitioner due process because it deprived him of his "only defense." Maj. op. at 1099. But a defendant does not have a right to present whatever defense he or she desires, whether or not supported by the law, and a state court may refuse to give an instruction to which a defendant is not entitled even if it is the only theory that the defendant wishes to advance. The California courts conclusively held that Petitioner was not entitled to the entrapment instruction under California law, so the failure to give an instruction was not arbitrary. The question, therefore, is whether Petitioner was entitled to an entrapment instruction as a matter of federal constitutional law.

The majority cites no meaningful authority that it is "clearly established federal law" that a defendant in Petitioner's circumstance is entitled to a defense of entrapment. Much is made of the fact that a defendant is entitled to a "complete defense." Maj. op. at 1098. Although that statement is accurate, it is entirely unhelpful to the present inquiry. We have authority to answer only a very narrow question: Did the California courts' refusal to give the entrapment instruction deprive Petitioner of due process? All of the cases cited by the majority simply beg the question: It is undisputed that Petitioner had a right to a complete defense and that California could not *arbitrarily* deprive him of his chosen defense. The only matter of

moment is whether an *entrapment instruction* was a part of a defense to which Petitioner was constitutionally entitled.

The majority dismisses the need for a precedent stating that a defendant presented with the opportunity to commit a crime by a drug-affected decoy is per se entitled to an entrapment instruction as a matter of federal constitutional law, regardless of the state law of entrapment. Such a "spotted calf" is not needed, the majority holds, because "[Petitioner] more than sufficiently supported his defense theory of entrapment." Maj. op. at 1101. The foregoing assertion is incorrect as a matter of law.

We *know* that Petitioner did not "sufficiently support[ ]" his theory of entrapment as a matter of *California* law. We know this because the California Court of Appeal has spoken directly to the issue, and the California Supreme Court did not disturb its holding.

If the majority is stating, instead, that Petitioner "sufficiently supported" his defense theory as a matter of *federal* law, "as determined by the Supreme Court of the United States," then it is necessary to find a Supreme Court precedent that "clearly establishe[s]" that defendants who satisfy a certain evidentiary threshold in a state criminal case governed by state law are constitutionally entitled to an entrapment instruction. As the majority concedes, no such case exists.

What those in the majority seem to be saying is that *they* consider the evidence sufficient to support an entrapment instruction. This kind of federal oversight of state-court proceedings is precisely what the Supreme Court in *Visciotti* and *Packer* has told us not to perform.

The majority also errs when it reasons that the giving of an entrapment instruction in the first trial shows that Petitioner was entitled to such an instruction under California law, maj. op. at 1097–98, or re-

quired the California Court of Appeal to explain "why the second judge could unilaterally ignore the first trial judge's findings of fact and conclusions of law regarding the entrapment instructions," maj. op. at 1101. The California Court of Appeal held that, on the evidence presented, Petitioner was not entitled to an entrapment instruction under California law. By clear implication, this means that, as a matter of California law, the *first* trial judge erred. Petitioner is not constitutionally entitled to perpetuate an erroneous instruction in his favor.

Equally unpersuasive is the majority's assertion that the judge's decision not to give the entrapment instruction in the second trial was a "kind of unauthorized second-guessing [that] is impermissibly arbitrary and can amount to a violation of Due Process." Maj. op. at 1098. The majority cites the California Court of Appeal's recent decision in *In re Alberto,* 102 Cal. App.4th 421, 125 Cal.Rptr.2d 526, 530 (2002), maj. op. at 1098, for the proposition that "for one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court." (Internal quotation marks omitted.) The majority fails to observe a crucial distinction between the present case and *Alberto.* In *Alberto,* one trial judge overruled a co-equal trial judge's in-force bail determination in the same case. 125 Cal.Rptr.2d at 530. In this case, Petitioner's first trial ended in a *mistrial.* The judge in a second trial is not compelled to follow determinations of fact or law established by the judge in an earlier proceeding that ended in a mistrial. To hold otherwise would undermine a basic tenet of California law. *See Mouser v. Superior Court,* 136 Cal. App.3d 110, 186 Cal.Rptr. 21, 23 (1982) (" 'The granting of a new trial places the parties in the same position as if no trial

had been had. All the testimony must be produced anew, and the *former verdict* or finding *cannot* be used or referred to, either in evidence or in argument....' Thus, the granting of a new trial has the same effect as a mistrial." (quoting Cal.Penal Code § 1180)); *Veitch v. Superior Court of the County of Santa Clara,* 89 Cal.App.3d 722, 152 Cal.Rptr. 822, 825 (1979) (same).

The fact that defense counsel allowed Petitioner's statement from the first trial to be read into the record of the second trial without first having secured the judge's ruling regarding an entrapment instruction may well constitute ineffective assistance of counsel. However, Petitioner makes no claim of ineffective assistance of counsel. We are not at liberty to distort his other claims so as to recognize this possibility.

In summary, the majority has failed to defer to the factual findings and state-law interpretation of the California courts, as we are required to do. When the correct standard of review is applied, reversal with instructions to deny the petition is required. I therefore dissent from the majority's decision to affirm.