**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 29 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OMAR CEBRERO, | No. 18-16333 |
| Petitioner-Appellant, | D.C. No. 1:16-cv-00173-DAD-JLT |
| v. | |
| ROSEMARY NDOH, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted February 12, 2021
San Francisco, California

Before: BERZON, CHRISTEN, and BADE, Circuit Judges.

Omar Cebrero appeals the district court's denial of his petition for habeas

corpus relief challenging his state conviction for kidnapping and felony murder.

We granted a certificate of appealability with respect to three issues, 28 U.S.C.

§ 2253(c)(1), and we affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We review de novo a district court's denial of a habeas corpus petition. *See Lambert v. Blodgett*, 393 F.3d 943, 964–65 (9th Cir. 2004). Our review is subject to the deferential standards established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as to "any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *see also Cone v. Bell*, 556 U.S. 449, 472 (2009). When AEDPA deference applies, we may only grant relief if the petitioner shows that the last reasoned decision of the state courts "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," *id.* § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

1.      Cebrero contends that the state trial court's failure to sua sponte instruct the jury on the defense of duress violated his due process right "to present a complete defense." *Bradley v. Duncan*, 315 F.3d 1091, 1098–99 (9th Cir. 2002) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). A defendant is only entitled to an instruction for a recognized defense where there is "evidence sufficient for a reasonable jury to find in his favor." *Id.* at 1098 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The California Court of Appeal's ("Court of Appeal") opinion, the last reasoned state court decision, concluded that Cebrero was not entitled to a sua sponte duress instruction under California law

because there was no evidence of a "demand that he participate" in the kidnapping of the victim.

Cebrero has not shown entitlement to habeas relief under § 2254(d)(1) because he did not present sufficient evidence for a reasonable jury to find duress. *See Bradley*, 315 F.3d at 1098; *see also Menendez v. Terhune*, 422 F.3d 1012, 1029–30 (9th Cir. 2005). While one of Cebrero's co-conspirators, Luis Valencia, threatened him, no one demanded that he participate in the kidnapping to avoid "imminent death." *People v. Petznick*, 7 Cal. Rptr. 3d 726, 736 (Ct. App. 2003) (citation omitted). Indeed, the evidence only supports that Valencia threatened to kill Cebrero if he (1) did not remain silent in the victim's presence so that the victim in the trunk would not identify him, or (2) discussed the kidnapping or the subsequent burning of the victim with others. Sometime after Cebrero received the first threat, he joined Valencia while another co-conspirator decided to stay behind, and the men then drove out to the countryside and eventually arrived at the field where the victim's burning occurred. Therefore, Cebrero had no due process right to a duress instruction because it was not supported by the evidence.[1]

We also reject Cebrero's argument that the Court of Appeal's decision was based on an unreasonable determination of the facts. Cebrero argues that there is

---

[1] We do not decide whether clearly established federal law establishes a due process right to a sua sponte jury instruction on a defense that is supported by sufficient evidence.

3

evidence supporting that he feared for his life, but none of the evidence supplies the missing demand that he participate in a crime to avoid "imminent death." *Id.*; *see also People v. Steele*, 253 Cal. Rptr. 773, 775 (Ct. App. 1988). Thus, the evidence Cebrero cites does not "go[] to a material factual issue," *Milke v. Ryan*, 711 F.3d 998, 1008 (9th Cir. 2013) (citation omitted), rendering it irrelevant to our review under § 2254(d)(2).

2. Cebrero also argues that there was insufficient evidence to support the felony murder special circumstance finding. When the sufficiency of the evidence underlying a conviction is challenged, we review "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted). To establish that Cebrero was guilty of special circumstance felony murder as an aider and abettor under California law, the prosecution had to establish that Cebrero was "a major participant" who acted "with reckless indifference to human life." Cal. Penal Code § 190.2(d). Cebrero challenges the Court of Appeal's determination that the evidence was sufficient to find he was a major participant.[2]

---

[2] Cebrero asserts that the Court of Appeal's decision is contrary to, or an unreasonable application of, *Tison v. Arizona*, 481 U.S. 137 (1987). In *Tison*, the Supreme Court held that the Eighth Amendment forbids a death sentence for a defendant convicted of felony murder unless there was "major participation in the

To qualify as a major participant, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." *People v. Banks*, 351 P.3d 330, 338 (Cal. 2015) (citations omitted).[3] Several factors are relevant:

> What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?

*Id.* at 338–39 (footnote omitted).

The Court of Appeal's determination that the evidence sufficiently supported that Cebrero was a major participant is not unreasonable. There was evidence that Cebrero had a financial stake in the drugs the victim purportedly sold without

---

felony committed, combined with reckless indifference to human life." *Id.* at 157–58. However, *Tison* is inapplicable to Cebrero's due process claim challenging the sufficiency of the evidence underlying his conviction because *Tison* dealt only with application of the death penalty. California, however, has "codif[ied] the holding of *Tison*" for sentences of life imprisonment without parole. *People v. Banks*, 351 P.3d 330, 332 (Cal. 2015) (citing Cal. Penal Code § 190.2(d)). So the standard, as codified, is pertinent state law applicable to the sufficiency of the evidence question.

[3] While *Banks* post-dates the Court of Appeal's decision, it is a clarification of section 190.2(d). *See In re Scoggins*, 467 P.3d 198, 201 (Cal. 2020). Consequently, section 190.2(d) as clarified by *Banks* was the law at the time of Cebrero's conviction. *See Fiore v. White*, 531 U.S. 225, 228 (2001).

obtaining payment; that he suspected that it was possible that the victim would be killed; that he permitted the continued use of his car once he joined the other participants after the initial kidnapping; that he was present during planning stages, including when Valencia obtained the bottle of gasoline that was used to light the victim on fire; and that he watched the victim scream as she was engulfed in flames and did not try to help her. The jury could also have credited testimony from a jailhouse informant that Cebrero helped remove the bound victim from his car immediately before Valencia and another individual lit the victim on fire.

This evidence relates to several of the factors outlined in *Banks* and weighs in favor of finding Cebrero a major participant. Cal. Penal Code § 190.2(d); *see Banks*, 351 P.3d at 338–39. A reasonable jury therefore could have found Cebrero was a major participant, and the Court of Appeal's decision to affirm his conviction was not an unreasonable application of *Jackson*.

3.    Finally, Cebrero asserts that he is entitled to habeas relief because he submitted evidence on state post-conviction review that his conviction was based in part on false testimony. It is unclear if there has been a decision on the merits as to this particular claim because the California Superior Court wrongly determined that the claim was procedurally barred, and both the California Court of Appeal and the California Supreme Court subsequently issued unreasoned summary denials. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). We need not resolve

6

whether AEDPA deference applies because this claim fails even under de novo review. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

To prevail on a due process claim based on false testimony, a petitioner must show that "the false testimony was material." *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012) (quoting *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc)). False testimony is material when there is "*any* reasonable likelihood that the false testimony *could* have affected the judgment of the jury." *Reis-Campos v. Biter*, 832 F.3d 968, 976 (9th Cir. 2016) (citation omitted).

Cebrero challenges part of the trial testimony of Luis Vazquez, one of Cebrero's co-conspirators and the government's witness, as false, based on Vazquez's post-trial declaration. On state habeas, Cebrero presented a declaration in which Vazquez states that his previous testimony was false. Specifically, Vazquez declared that he omitted during his testimony that he gestured to a holstered gun when Cebrero joined the co-conspirators after the victim was kidnapped. Cebrero argues that this evidence is material because it would have supported his defense that he was a victim during the kidnapping and killing.

The government argued during closing argument that "if you believe that the defendant was a victim in all of this, you should let him go," and the court instructed the jury that "[a] co-participant in a crime is a perpetrator or anyone who aided and abetted the perpetrator [which] does not include a victim or innocent

7

bystander." Therefore, we must consider whether the false testimony was reasonably likely to have affected the jury's view of Cebrero as a victim, with or without a duress instruction.

First, there is no evidence that Cebrero saw Vazquez gesture to his gun. In his closing argument, Cebrero's defense counsel argued that Cebrero was threatened by three co-conspirators, none of whom were Vazquez. Further, Cebrero never made any mention of being threatened with a gun during his interview with detectives. Cebrero submitted no declaration on state habeas filling these gaps.

Second, Cebrero's participation began before his interaction with Vazquez and continued in Vazquez's absence. For example, there was evidence from the jailhouse informant that Cebrero had loaned his car to some of the other co-conspirators to prove he was not responsible for the missing drugs. And Vazquez was not present when, according to the jailhouse informant, Cebrero helped remove the victim from the car shortly before her burning.

Thus, there is no reasonable likelihood that evidence that Vazquez gestured to a gun would have affected the jury's verdict. *See Reis-Campos*, 832 F.3d at 977–78. Crucial details—such as the victim owing Cebrero money for the missing drugs, Cebrero's presence during planning stages, Cebrero's recognition that his co-conspirators contemplated killing the victim, and Cebrero's role in removing

8

the victim from his car—are independently supported by Cebrero's interview with detectives or the testimony of the jailhouse informant who testified against Cebrero. *See Jones*, 691 F.3d at 1106 (holding false evidence was not material where there was "overwhelming evidence of guilt unrelated" to false evidence). It is unlikely that any impeachment value with regard to Vazquez from Cebrero's new evidence would affect the jury's verdict. We therefore reject Cebrero's due process claim.

**AFFIRMED.**