Filed 9/1/21  P. v. Harper CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADAM WAYNE HARPER,<br><br>Defendant and Appellant. | F078674<br><br>(Super. Ct. No. F18902657)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jane Cardoza, Judge.

Carla J. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Adam Wayne Harper contends on appeal that (1) his right to present a complete defense was violated when the trial court denied his request to instruct on a lesser related offense, (2) he was deprived of his Sixth Amendment right to competent counsel by defense counsel's failure to object to jury instruction CALCRIM No. 3551, (3) the court abused its discretion in considering only his recidivist status in denying his *Romero*[1] motion, and (4) three 1-year prior prison term enhancements should be stricken from his sentence in light of Senate Bill No. 136.  We strike the prior prison term enhancements and affirm in all other respects.

## PROCEDURAL SUMMARY

On April 23, 2018, the Fresno County District Attorney charged defendant with second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b);[2] count 1) and possession of ammunition by a person prohibited from owning a firearm (§ 30305, subd. (a)(1); count 2).  The felony complaint further alleged that defendant had suffered a prior felony "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and had served three prior prison terms (§ 667.5, subd. (b)).

On June 22, 2018, the defense declared a doubt as to whether defendant was competent to stand trial pursuant to section 1368.  The trial court suspended criminal proceedings and appointed Dr. Howard Terrell to conduct a section 1368 examination.  On July 19, 2018, defendant waived his right to a jury trial and submitted the issue of competency on the report of Dr. Terrell dated July 12, 2018.  The court stated that Dr. Terrell was of the opinion that, although defendant suffered some incapacities, he was competent to stand trial.  The court adopted the recommendation, found that defendant was competent, and reinstated criminal proceedings.

---

[1]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[2]     Undesignated statutory references are to the Penal Code.

2.

On July 24, 2018, the defense again declared a doubt as to defendant's competency. The court suspended proceedings and appointed Dr. Doriann Hughes. Dr. Hughes found that defendant demonstrated some delusional beliefs but was competent. On August 21, 2018, the defense submitted on the report of Dr. Hughes. The court found defendant competent and reinstated criminal proceedings.

An information was filed on September 7, 2018. After a trial, on November 19, 2018, a jury found defendant guilty on both counts. In a bifurcated proceeding, defendant waived his right to a jury trial on the prior convictions and admitted the prior strike conviction and the prior prison terms.

On January 9, 2019, the trial court sentenced defendant to seven years in prison: on count 1, the midterm of two years, doubled pursuant to the Three Strikes law; on count 2, the midterm of two years, doubled pursuant to the Three Strikes law, to be served concurrently; plus three 1-year prior prison term enhancements.

On January 9, 2019, defendant filed his notice of appeal.

### FACTS

At about 9:00 p.m. on April 18, 2018, the owner of a small grocery and convenience store closed up the store for the night, emptying his cash register before locking the windows and doors and going home. He left the keys in the cash register but removed the money. When he and his son returned the next morning at about 7:15 a.m. to open the store, the owner discovered one of the store's windows was broken and a jacket he had never seen before was covering the opening. There was also a hammer he had never seen before lying on the floor inside the store. The owner and his son found three boxes sitting outside the store containing the cash register, energy drinks, candy, and cigarette boxes from the store.

While outside the store, they saw a car pull up in front. Defendant exited the car and attempted to pick up the boxes containing the cash register and other items. The son stopped defendant from picking up the items while the owner called the sheriff's

3.

department. As the owner spoke to the sheriff's department, defendant walked away from them and started to run. The owner saw defendant throw several items out of his pockets onto the ground as he ran across the street. Defendant then stopped and waited in a parking lot across the street from the store.

Sheriff's deputies arrived soon after the owner's call. After the owner talked with the sheriff's deputies for several minutes, the deputies went across the street and arrested defendant where he was still waiting. The deputies searched defendant's pockets and also the street and parking lot where the owner saw defendant throw items as he ran. In defendant's pockets, deputies found $13 in loose change, two brand new packs of cigarettes, eight lighters, a new roll of black electrical tape, 12 silver dollars, and six bandannas. They recovered keys for the store's cash register and two shotgun shells from the parking lot across the street where defendant had thrown things while running. Defendant was cooperative. The deputies saw no marijuana or influence of marijuana use by defendant.

The deputies transported defendant to their substation. There, defendant was interviewed by Detective Carl Chalmers, the arresting officer, Deputy Patrick Beggs, and Detective Eric Penland.

At trial, a video recording of defendant's interview was played for the jury. Detective Chalmers and Deputy Beggs testified about the recorded interview. Defendant admitted during the interview that he entered the store by breaking the window during the night and that he took loose change, silver dollar coins, the store keys, food, energy drinks, and bandannas. He did not admit to using the hammer to break the window. He told them the hammer was already inside the store. He admitted he stacked items in the boxes and left them outside the store, planning to come back for them because he could not carry everything at once. Defendant said he felt a little bit bad about breaking in, so he swept up some of the mess he made. Defendant said he hung the jacket over the window and locked the back door when he left. Defendant stated that he knew the owner

4.

of the store; however, the person he named was not the owner. Defendant said he used some marijuana the night he broke into the store. He stated that, in the morning, a friend gave him a ride back to the store so he could retrieve the boxes he left outside. The friend did not know about the burglary. When Detective Chalmers asked why he went into the store, defendant stated, "Right. Well, I heard in my head (Dennis Lane Harper) wanted me to go in there so I did." Detective Chalmers testified defendant was dirty and unkempt and appeared as though he might be homeless.

## DISCUSSION

### I. Instruction on Lesser Related Offense

Defendant contends his constitutional right to present a complete defense was violated when the trial court denied his request to instruct on the lesser related offense of theft by larceny as to count 1, the charge of burglary. The People argue defendant was not entitled to lesser related offense instructions as a component of his constitutional right to present a defense, and the lack of instructions on theft by larceny did not prevent defendant from arguing that he lacked the requisite elements of burglary as a theory of his defense. We agree with the People.

#### A. *Background*

The defense theory at trial was that when defendant entered the building, he had no specific intent to commit a theft; he went in because a voice told him to do so and he was just seeking shelter because it was cold outside and he was homeless. Defendant requested an instruction on the lesser related offense of theft by larceny on the burglary count. The prosecutor objected, and the trial court denied the request. The court noted it had found no authority to support the position that theft by larceny is a lesser included offense of burglary, and that the prosecutor had not alleged in the information a separate and independent charge concerning theft. During argument to the jury, defense counsel argued defendant did not have the requisite intent for a burglary conviction.

5.

### B. Law

#### 1. Duty to Instruct

Under the United States Constitution, a defendant has a due process right to present a full defense and to receive jury instructions that would make such a defense possible. (*Crane v. Kentucky* (1986) 476 U.S. 683, 690 ["the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense' "]; see *Conde v. Henry* (9th Cir. 1999) 198 F.3d 734, 739–740 ["It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case"].)

Under California law, " '[i]t is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence' " and " 'necessary for the jury's understanding of the case.' " (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189.) This duty to instruct extends to defenses " 'if it appears … the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 73.)

This duty also applies to any lesser offenses that are *necessarily included* in the charged offenses when there is substantial evidence the defendant is guilty only of the lesser offense. (*People v. Birks* (1998) 19 Cal.4th 108, 118–119 (*Birks*) [courts must instruct in this situation even absent a request and over the parties' objections]). However, "[i]f a lesser offense shares some common elements with the greater offense, or if it arises out of the same criminal course of conduct as the greater offense, but it has one or more elements that are not elements of the greater offense as alleged, then it is a lesser *related* offense, not a necessarily included offense." (*People v. Hicks* (2017) 4 Cal.5th 203, 209, italics added, citing *Birks*, at pp. 119–120.)

The federal Constitution does not require state trial courts to provide jury instructions on offenses that are not lesser included offenses of the charged crime.

(*Hopkins v. Reeves* (1998) 524 U.S. 88, 90–91.)  Similarly, under California law, a defendant does not have "a unilateral entitlement to instructions on lesser offenses which are not necessarily included in the charge." (*Birks*, *supra*, 19 Cal.4th at p. 136.)  "[I]t is ordinarily the prosecution's function to *select* and *propose* the charges," and substantial separation of powers issues arise if criminal defendants are allowed the "right to insist on jury consideration of nonincluded offenses without the prosecutor's consent."[3] (*Birks*, at pp. 134, 136.)  In *People v. Rundle* (2008) 43 Cal.4th 76, the court expressly held that "there is no federal constitutional right of a defendant to compel the giving of lesser-related-offense instructions." (*Id.* at p. 148, overruled on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

A defendant's right to a complete defense is not infringed by denial of instructions on a lesser related offense where the "defense" is in actuality not a true defense to the charged offense but rather a related "theory of criminal liability based on a different offense" because "the failure to give the instruction [on the lesser related offense does] not impinge on [the defendant's] right to present a defense to [the greater charged offense].  It simply reflect[s] the fact that the prosecutor chose not to file on the other [lesser related] charge.  We do not suggest, however, that [the defendant] could not argue to the jury that his culpability was as one who [committed the lesser related offense] but not one who committed [the greater charged offense]." (*People v. Valentine* (2006) 143 Cal.App.4th 1383, 1388 (*Valentine*); see *Birks*, *supra*, 19 Cal.4th at p. 136, fn. 19 ["Finally, nothing in our holding prevents the defendant from arguing in any case that the evidence does not support conviction of any charge properly before the jury, and that complete acquittal is therefore appropriate"].)  The argument that "there is a general

---

[3]     *Birks* noted:  "[O]ur decision does not foreclose the parties from agreeing that the defendant may be convicted of a lesser offense not necessarily included in the original charge. When the parties consent to such a procedure … neither can claim unfairness, and the prosecution's role in determining the charges is not improperly compromised." (*Birks*, *supra*, 19 Cal.4th at p. 136, fn. 19.)

federal constitutional due process right to present the 'theory of the defense case,' thus requiring that the instruction … on [the lesser related offense] be given … merely … recast[s] in different terms the same claims we already have rejected." (*People v. Rundle*, *supra*, 43 Cal.4th at p. 148.)

The appropriate standard of review for claims of instructional error is independent or de novo review. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

### 2. Theft and Burglary

Section 484, subdivision (a), criminalizes theft by larceny in that "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another … is guilty of theft."

Section 459 defines burglary, providing that "[e]very person who enters any house, room, apartment, tenement, shop, warehouse, store … with intent to commit grand or petit larceny or any felony is guilty of burglary."

As theft by larceny shares some common elements with the greater offense of burglary, but has at least one element that is not an element of burglary as alleged, theft by larceny is a lesser *related* offense to burglary, not a lesser included offense. (See *Birks*, *supra*, 19 Cal.4th at pp. 119–120.)

### C. Analysis

Here, defendant argues that his constitutional right to present a complete defense was violated because the court denied his request to instruct on the lesser related offense of theft by larceny as to count 1, the charge of burglary. He argues that the established cases of *Birks* and *Valentine* should be overturned, because without an instruction on a lesser related offense, his constitutional right to present a defense is meaningless. He urges us to hold that if a defendant has a right to present a lesser related offense *as a theory of his defense* to the charged crime, then the trial court must instruct the jury on the elements of the lesser related offense, with an explanation that the lesser related offense is not a charged offense in the case but simply the defense theory. He claims this

would prevent the prosecutor's authority to choose the charges against the defendant from being undermined.

Defendant points to three cases as support for his position: *Bradley v. Duncan* (9th Cir. 2002) 315 F.3d 1091, 1099 ("the right to present a defense 'would be empty if it did not entail the further right to an instruction that allowed the jury to consider the defense' "); *People v. St. Martin* (1970) 1 Cal.3d 524, 531 (under state law, the trial court must instruct jurors on all issues relevant to their understanding of the case); and *Conde v. Henry*, *supra*, 198 F.3d at pages 739–740 (a defendant is entitled to adequate instructions on the defense theory of the case). However, defendant fails to note that none of these cases involved instructions on lesser related offenses.

Defendant's argument that he was entitled to a lesser related offense instruction under state law principles and as a component of his constitutional right to present a defense is foreclosed by *Birks* and *Valentine* (see *Birks*, *supra*, 19 Cal.4th at p. 136; *Valentine*, *supra*, 143 Cal.App.4th at p. 1388), and we are bound by those cases (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["The decisions of this court are binding upon and must be followed by all the state courts of California"]). But we note that defendant was not prevented from presenting a defense because theft by larceny is not a defense to the crime of burglary; it is a separate criminal offense. Furthermore, defendant was not barred from arguing his defense theory that he was only culpable of stealing the items from the store, rather than entering the store with the intent to commit a felony, and thus that he lacked the intent necessary for the greater offense of burglary. In fact, defense counsel did argue, "What this case is about, there's one issue in this case, and that's that the People cannot prove [defendant]'s intent at the time of entry .… That is what needs to be proven in order to prove a burglary. It has to be at the time of entry, not after."

Accordingly, the trial court did not err in refusing defendant's request to instruct the jury on the lesser related offense of theft by larceny, and defendant was not denied his

9.

federal Constitutional right to present a complete defense by the trial court's refusal to so instruct the jury, as he could still argue it as a theory of his defense.

## II.     Ineffective Assistance of Counsel

Defendant contends he was deprived of his Sixth Amendment right to competent counsel by defense counsel's failure to object to the trial court's instruction with CALCRIM No. 3551, urging the jury to continue deliberating. Defendant argues defense counsel should have objected because (1) the trial court instructed with CALCRIM No. 3551 without first asking the jurors if further instruction might assist them or determining their numerical division, and (2) CALCRIM No. 3551 was coercive and violative of defendant's right to due process. Defendant claims he was prejudiced by defense counsel's failure to object to the instruction because had she objected, the trial court would not have given the instruction, the jury would not have reached a verdict on the burglary charge, and he would not have been found guilty. The People respond that the instruction was proper and defendant's trial counsel performed competently. We agree with the People.

### A.     *Background*

After approximately four hours of presenting evidence during two days of trial, the parties gave closing arguments. At 11:20 a.m. the day closing arguments were made, the jury began deliberations. A little less than four hours later, at 3:06 p.m., the jury submitted a written note to the judge. It stated, "We would like clarification on what to do in the event of a dead-lock that seems unlikely to be resolved; we have a verdict on one count, but are at an impasse on the other." The court discussed the matter with counsel off the record. The prosecutor suggested the court instruct the jurors with CALCRIM No. 3551, to urge them to continue deliberations. The court stated on the

10.

record that it "appears appropriate," presumably referring to the decision to give the jury the instruction. The court read CALCRIM No. 3551 to the jury, stating:

> "Sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict on one or more counts.

> "Please consider the following suggestions. Do not hesitate to reexamine your own views. Fair and effective jury deliberations require a frank and forthright exchange of views. Each of you must decide the case for yourself and form your own individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment.

> "Do not change your position just because it differs from that of other jurors or just because you or others want to reach a verdict. Both the People and the defendant are entitled to the individual judgment of each juror. It is up to you to decide how to conduct your deliberations.

> "You may want to consider new approaches in order to get a fresh perspective. Let me know whether I can do anything to help you further, such as give additional instructions or clarify instructions I have already given you.

> "Please continue your deliberations at this time. If you wish to communicate with me further, please do so in writing using the form my deputy has given you which is actually contained in your deliberation binder."

Defense counsel made no comment or objection, either before or after the instruction was given, regarding the use of the instruction.

After the instruction was given, the jury resumed deliberations from 3:37 p.m. until 4:25 p.m. After a weekend recess, the jury returned the following Monday and continued deliberating from 9:00 a.m. to 9:17 a.m. At 9:17 a.m., the jury notified the court it had reached a verdict. The jury found defendant guilty of second degree burglary (count 1) and possession of ammunition by a person prohibited from owning a firearm (count 2).

11.

### B. Law

#### 1. Ineffective Assistance

"The Sixth Amendment guarantees competent representation by counsel for criminal defendants. [Reviewing courts] presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making significant trial decisions." (*People v. Holt* (1997) 15 Cal.4th 619, 703.) "A defendant who raises the issue on appeal must establish deficient performance based upon the four corners of the record." (*People v. Cunningham*, 25 Cal.4th 926, 1003 (*Cunningham*).) "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, … and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*Cunningham*, at p. 1003, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–694 (*Strickland*).)

Defense counsel's performance is reviewed with deferential scrutiny, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland*, *supra*, 466 U.S. at p. 689.) Our review accords " 'great deference to counsel's tactical decisions.' " (*People v. Mickel* (2016) 2 Cal.5th 181, 198.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective

assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Counsel is not ineffective for failing to make a meritless objection or motion. (*People v. Weaver* (2001) 26 Cal.4th 876, 931.)

Further, the defendant must affirmatively prove prejudice. (*Mickel*, *supra*, 2 Cal.5th at p. 198.) The defendant must show a reasonable probability of a more favorable result. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217–218.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*Cunningham*, *supra*, 25 Cal.4th at p. 1003.) Mere speculation does not meet the Sixth Amendment standard for demonstrating prejudice. (*In re Clark* (1993) 5 Cal.4th 750, 766.) The reviewing court does not need to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant; if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. (*Strickland*, *supra*, 466 U.S. at p. 697.)

### 2.     Deadlocked Jury

Section 1140 provides the trial court with discretion to determine whether there is a reasonable probability of agreement among jurors who have not yet agreed upon a verdict. The statute states:

> "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." (§ 1140.)

Section 1140 clearly commits to the trial judge, not to the jury, the determination of the question whether " ' "there is no reasonable probability that the jury can agree." ' " (*People v. Finch* (1963) 213 Cal.App.2d 752, 763.) "The trial court is therefore required to determine in its 'sound discretion' whether there is a reasonable probability of

agreement by the jury. [Citation.] However, '[t]he court must exercise its power … without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." ' " (*People v. Whaley* (2007) 152 Cal.App.4th 968, 980.) Accordingly, " 'the court may direct further deliberations upon its reasonable conclusion that such direction would be perceived " 'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.' " ' " (*People v. Debose* (2014) 59 Cal.4th 177, 209 (*Debose*).)

California Rules of Court, rule 2.1036(a),[4] also provides guidance for the trial court:

> "After a jury reports that it has reached an impasse in its deliberations, the trial judge may, in the presence of counsel, advise the jury of its duty to decide the case based on the evidence while keeping an open mind and talking about the evidence with each other. The judge should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict." (Rule 2.1036(a).)

Rule 2.1036(b)(1) states in part, "[i]f the trial judge determines further action might assist the jury in reaching a verdict, the judge may … [¶] … give additional instructions."

"While rule 2.1036 does not state so expressly, it is apparent the trial court has discretion when choosing whether to resort to the tools provided and how to use those tools." (*People v. Salazar* (2014) 227 Cal.App.4th 1078, 1088.) The trial court is not required to question the jurors as to whether a verdict can be reached when exercising its discretion in determining whether there is a reasonable probability of reaching a verdict. (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1121–1122 (*Moore*).) Nor is the trial court required by rule 2.1036 to first poll the jurors as to their numerical division. (*Debose*, *supra*, 59 Cal.4th at p. 210.)

---

**4** All references to rules are to the California Rules of Court.

14.

When giving instructions to a deadlocked jury, "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (*People v. Gainer* (1977) 19 Cal.3d 835, 852, fn. omitted (*Gainer*), disapproved on another ground by *People v. Valdez* (2012) 55 Cal.4th 82, 163 (*Valdez*).) In *Gainer*, the trial court gave the jury an instruction that explicitly told the deadlocked jurors, "the case must at some time be decided," "listen [to each other] with a disposition to be convinced to each other's arguments," and "a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one, which makes no impression upon the [majority of the other jurors]." (*Gainer*, at pp. 841–842.) The *Gainer* court disapproved of this so-called "dynamite" instruction or "*Allen* charge" (*Allen v. United States* (1986) 164 U.S. 492), which was used as a means of "blasting" a verdict out of a deadlocked jury, because such an instruction tells "the jury to consider extraneous and improper factors, inaccurately states the law, carries a potentially coercive impact, and burdens rather than facilitates the administration of justice." (*Gainer*, at pp. 842–843.)

## C.     *Analysis*

### 1.     Questioning Jurors Before Instructing

Defendant contends the trial court erred in instructing the jury with CALCRIM No. 3551 without first asking the jurors if further instruction might assist them (see rule 2.1036) and determining their numerical division to ascertain whether there was a reasonable probability the jury could reach a verdict. We find no error.

The trial court was not required by section 1140 or rule 2.1036 to first question the jury or determine its numerical division when determining whether there was a reasonable probability of agreement among jurors who reported an impasse. Section 1140 and rule 2.1036 gave the trial court discretion in determining what, if any, tools to use and how to use them when making this determination.

15.

Despite rule 2.1036(a)'s suggestion that the court "should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict," the court in *Moore*, *supra*, 96 Cal.App.4th 1105 found the trial court did not err in ascertaining whether there was a reasonable probability of the jury reaching a verdict without first questioning the jurors. (*Id*. at pp. 1108, 1118–1120.) In *Moore*, the jurors reported to the trial court that they were deadlocked one day after deliberations began, and the trial court instructed them to deliberate further, without first asking if they had any specific concerns. (*Id*. at p. 1118.) Following the supplemental instruction, the jury reached a verdict two hours after resuming deliberations. (*Id*. at p. 1120.)

Defendant attempts to distinguish *Moore* by arguing that the trial in *Moore* was long and complex, while the trial here was brief. However, despite the differences in charges and lengths of the trials, the same reasoning holds true here as in *Moore*. The jury here also returned a verdict quickly (65 minutes) after resuming deliberations once the trial judge gave the supplemental instruction. In *Moore*, presumably because of the relatively brief duration of deliberations before the jurors announced they could not reach a verdict, the trial court concluded further deliberations might be beneficial without first questioning the jury regarding the impasse. (*Id*. at pp. 1118–1120.) The reasoning of the trial court here was presumably the same as that of the trial court in *Moore*: that juries deadlocked after only brief deliberations are likely to reach a consensus with further deliberations. Clearly, the *Moore* court interpreted rule 2.1036(a)'s phrase ("should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict") as meaning it is advisable to question the jury before instructing, but not required. As defendant admits, the fact the jury in *Moore* was able to reach a verdict relatively quickly after being further instructed reflected that the court properly exercised its discretion in giving supplemental instructions without first questioning the jurors. The same is true here. Accordingly, the court did not err in giving CALCRIM No. 3551 without first questioning the jury.

Nor was the trial court required to poll the jury to determine its numerical division before giving further instruction. As the court in *Debose* explained, "[a]lthough we have expressly approved of inquiring into a jury's numerical division in the event of a deadlock (see, e.g., *People v. Breaux* (1991) 1 Cal.4th 281, 319), we have never held this to be mandatory." (*Debose*, *supra*, 59 Cal.4th at p. 210.)

Because the trial court did not err in further instructing the jury without first questioning the jurors as to whether further instruction might assist them or determining their numerical division to ascertain whether there was a reasonable probability the jury could reach a verdict, an objection on this issue would have been meritless and defense counsel was not ineffective for failing to object.

### 2. CALCRIM No. 3551

Next, defendant contends instructing the jury with CALCRIM No. 3551 violated his right to due process because it was a coercive and improper *Allen* charge. Again, we find no error.

First, defendant argues that the portion of CALCRIM No. 3551 stating "sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict" implies to the jurors that it is preferable to reach a verdict and that the they have failed if they do not. He argues that this portion of the instruction told the jurors to consider the position of the judge, their own status as minority jurors, and the position of the majority jurors in determining defendant's guilt, rather than their individual judgment, and sent the same message as the language disapproved of in the *Gainer* instruction, which explicitly told the jury they "should consider that the case must sometime be decided." (*Gainer*, *supra*, 19 Cal.3d at pp. 851–852.) However, unlike *Gainer*, CALCRIM No. 3551 does not discuss "majority," "minority," or "holdout," nor does it mention the trial court's position on reaching a verdict. The portion quoted by defendant does not suggest that jurors should change their position based on anything other than the evidence, or that they should consider any

17.

extraneous information or positions in reaching a determination. It only suggests that sometimes, with further deliberation, a deadlocked jury might reach a verdict.

Defendant concedes that the language of the instruction here is similar to the language in *Moore*, which read in pertinent part:

> "Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented …. [¶] … [¶] [E]ach of you must decide the case for yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge if you can do so without violence to your individual judgment." (*Moore*, *supra*, 96 Cal.App.4th at pp. 1118–1119.)

The *Moore* court rejected the argument that this instruction was a coercive and improper *Allen* charge, and instead commended the trial court "for fashioning such an excellent instruction." (*Moore*, *supra*, 96 Cal.App.4th at p. 1122.) The court found that nothing in the trial court's instruction was designed to coerce the jury into returning a verdict. (*Id.* at p. 1121.)

Defendant also attempts to distinguish CALCRIM No. 3551 from CALJIC No. 17.40, approved of in *Valdez*, *supra*, 55 Cal.4th 82, which specifically told jurors not to compromise or give in to the majority and addressed both the majority and minority equally. (*Id.* at p. 162.) However, CALCRIM No. 3551 is substantively similar to the instruction approved of in *Valdez*. The language used here also explicitly told the jurors they should not compromise their individual judgment for the sake of agreeing with the majority or simply reaching a verdict, and the trial court here never directly addressed the majority or minority at all. Accordingly, the CALCRIM No. 3551 portion at issue here, stating that "sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict," did not imply to the jury that it is preferable to reach a verdict and that the jury has failed if it does not.

Second, defendant contends the language in CALCRIM No. 3551, stating to the jurors that it was their duty "to deliberate with the goal of reaching a verdict if you can do

so without surrendering your individual judgment," sent the same message as the language disapproved of in *Gainer*, which said the jury " 'should consider that the case must at some time be decided.' " (*Gainer*, *supra*, 19 Cal.3d at p. 845.) However, the trial court here did not say or imply that the case must be decided. To the contrary, the court here explicitly instructed the jury, "Do not change your position just because it differs from that of other jurors or just *because you or others want to reach a verdict*." (Italics added.) Unlike *Gainer*, this language does not tell the jury they must reach a verdict. Nor does this language suggest that a failure to reach a unanimous decision would require a retrial. In *People v. Virgil* (2011) 51 Cal.4th 1210, the Supreme Court found that it was not coercive to instruct a jury that it "must make every effort to reach [a] unanimous [verdict] if at all possible" in response to a jury question about what would happen if it was unable to reach a unanimous verdict. (*Id.* at pp. 1281–1282.) Also, in *People v. Butler* (2009) 46 Cal.4th 847, the court found that the trial court properly instructed a deadlocked jury "to pursue 'the purpose of reaching a verdict, *if you can do so*,' and that it was 'their duty to decide the case, *if you can conscientiously do so*.' " (*Id.* at p. 884.) Accordingly, the language at issue here, telling the jury it was their duty "to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment," was not coercive and did not violate defendant's due process.

Third, defendant argues the instruction violated his due process right to have his guilt or innocence determined by the unanimous verdict of a jury of 12 persons because it encouraged minority jurors to agree with the majority. Defendant contends CALCRIM No. 3551 "places the sanction of the court behind the views of the majority, whatever they may be, and tempts the minority juror to relinquish his position simply because he has been the subject of a particular instruction." Defendant claims the language put the minority jurors under inevitable pressure to agree with the majority.

As discussed above, the trial court never used any language referring to the minority, majority, or holdouts. Unlike the disapproved-of language in *Gainer*, the

19.

language in CALCRIM No. 3551 did not put pressure on the minority jurors to agree with the majority. (See *Gainer*, *supra*, 19 Cal.3d at p. 852.) Instead, CALCRIM No. 3551 explicitly told jurors not to "change your position just because it differs from that of other jurors or just because you or others want to reach a verdict. Both the People and the defendant are entitled to the individual judgment of each juror," and instructed the jurors that it was their duty to deliberate with the goal of reaching a verdict on the charge "if you can do so without surrendering your individual judgment." As a result, CALCRIM No. 3551 did not violate defendant's due process right to have his guilt or innocence determined by the unanimous verdict of a 12-person jury. Again, any objection by defense counsel would have been meritless, and thus counsel was not ineffective for failing to object.

### 3.    Conclusion

Because the trial court did not err, any objections to these issues would have been meritless. Defense counsel had no duty to make meritless motions, and defendant was not prejudiced by counsel's failure to make them. Thus, defendant was not denied his Sixth Amendment rights to competent counsel and due process.

## III.    *Romero* Motion

Defendant contends the trial court abused its discretion in considering only defendant's recidivist status in denying his *Romero* motion to dismiss a prior strike. The People argue the trial court did not abuse its discretion in denying defendant's *Romero* motion and was not required to state its reasons for doing so. We agree with the People.

### A.    *Background*

Defendant filed a motion to dismiss his prior strike conviction for assault with a deadly weapon other than a firearm or by any means of force likely to produce great bodily injury (§§ 245, subd. (a)(1), 12022.7, subd. (a)), for which he was sentenced to prison for six years. He argued in both his written motion and at the hearing that the trial court should dismiss the strike because the conviction was 18 years old, his current

20.

offense was not violent, he cooperated with police and did not resist arrest, and he was homeless.

Defendant's motion set out the details of the current offense, arguing that the evidence presented at trial demonstrated that defendant may have had mental health issues that clouded his judgment when he committed the burglary, and that he stole items from the store that could be considered necessities for a homeless individual. According to the motion, "[t]hese items include[d] soap, deodorant, medicine, bandan[n]as, a couple of beverages and change, [defendant] later indicated was for food," and defendant was wearing the bandannas as socks. The motion further argued that defendant's current offense showed no prior planning or sophistication, and defendant did not flee the scene. Since the prior conviction, defendant had not incurred further serious or violent convictions, and the offenses for which he had been convicted were decreasing in severity.

Defense counsel argued at the hearing that based on defendant's criminal history, the remoteness of his 18-year-old prior conviction, and the nonviolent nature of the current offense, the trial court should strike the prior conviction. She noted that, in the current offense, the items defendant took were inexpensive, and when he was found, he remained in the area and was not combative towards the owner's son or the police. Some of defendant's prior violations of probation occurred because his homelessness made it difficult for him to maintain contact with probation. Counsel also pointed out that defendant's criminal history showed he pled to several offenses on the same day. She argued that defendant would still be subject to a lengthy prison sentence even if the court chose to strike the prior conviction.

The prosecutor opposed the motion, arguing that defendant had an ongoing, consistent criminal history and lacked the ability to stop committing crimes. The prosecutor also pointed out that the multiple criminal offenses defendant pled to on the same day were actually many different crimes involving separate cases.

21.

The probation officer's report included a detailed criminal history showing that defendant had suffered the prior strike conviction in 2000 for assault with a deadly weapon with an enhancement for great bodily injury, and following that conviction, he committed four felonies and four misdemeanors, and accumulated four parole violations, three violations of postrelease community supervision, and three flash incarcerations. The report also set forth information about the institution of section 1368 proceedings on two occasions, stating that defendant was found competent to stand trial. The report noted that defendant reported using heroin while in state prison and had never participated in any drug or alcohol treatment. The report listed factors in aggravation, including that defendant had engaged in violent conduct indicating a serious danger to society, suffered numerous prior convictions, served a prior prison term, was on probation or parole when the crime was committed, and performed unsatisfactorily on probation or parole. The report listed no factors in mitigation in determining the appropriate sentence.

The trial court stated it had reviewed and considered both defendant's motion and the probation officer's report. The court denied defendant's motion as follows:

> "The matter having then been submitted, as I stated, the Court has read and considered the Defense request to strike the prior pursuant to the case of *People v. Romero*. The Court after consideration of the constitutional rights of the defendant and the interests of society, let me make it clear the Court is aware of its discretion under … section 1385. After consideration of [] defendant's written statement and request for relief, defendant's request for relief is denied. Even though [] defendant's strike was suffered over 18 years ago, [] defendant has failed to remain crime free. He has a lengthy criminal history which includes several prior prison commitments and has suffered multiple [postrelease community supervision] violations. And for all those reasons, the Court will deny [] defendant's request." (Italics added.)

### B. Law

Section 1385 grants trial courts limited discretion to strike prior convictions in Three Strikes cases. (§ 1385.) Trial courts may strike prior felony conviction allegations

in cases brought under the Three Strikes law in furtherance of justice.  (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.)  The lower court must determine whether "in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

While a defendant's recidivist status is relevant, it is not singularly dispositive. (*People v. Garcia* (1999) 20 Cal.4th 490, 501.)  The court must look at the totality of the circumstances to determine whether the defendant falls outside the spirit of the Three Strikes law.  (*Id.* at pp. 498–499.)  The relevant factors, as identified in *Romero*, include the defendant's background, the nature of his present offense, and other individualized considerations.  (See *Romero*, *supra*, 13 Cal.4th at p. 531.)  The sentence imposed by the trial court is itself a factor when deciding the defendant's prospects for committing future crimes because the defendant will have fewer opportunities to commit crimes while incarcerated.  (*People v. Gaston* (1999) 74 Cal.App.4th 310, 315.)

It is the defendant's burden to provide the trial court with evidence to support his *Romero* motion.  (*People v. Lee* (2008) 161 Cal.App.4th 124, 129.)

A trial court need not state any reasons when it denies a *Romero* motion.  (*In re Large* (2007) 41 Cal.4th 538, 550; see § 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at p. 531; *People v. Orin* (1975) 13 Cal.3d 937, 945.)  On review, the trial court's denial of the motion is strongly presumed to be a proper exercise of discretion.  (*In re Large*, at p. 551.)  "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

## C. Analysis

Here, defendant contends the trial court abused its discretion because it considered only his recidivist status when it denied his *Romero* motion. He notes the trial court discussed his prior criminal history but failed to discuss the purported mitigating factors presented in his motion as required by section 1385.

We conclude the trial court properly denied defendant's *Romero* motion to strike his prior conviction. The court was not required to state any reasons when denying defendant's motion, and "is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers*, *supra*, 69 Cal.App.4th at p. 310.) Even though the court here focused its statement denying defendant's motion on defendant's criminal history, this does not mean the court did not also consider the other relevant factors outlined in defense counsel's argument in support of the motion. The trial court stated that it was aware of its discretion under section 1385, and that it had reviewed and considered the probation officer's report, as well as defendant's written motion. Defendant's motion discussed his mental health issues and his need for basic hygiene and health care at the time he committed the crimes at issue. These were all mitigating factors under section 1385. The probation report detailed the nature of defendant's criminal history, including his numerous convictions, parole and probation violations, and flash incarcerations for failing to report to the probation officer, as well as his history of alcohol and drug abuse. Defendant's extensive criminal history included 10 convictions and repeated violations of probation and parole over a 20-year period. The report also discussed mitigating factors, including issues concerning his competence to stand trial, the decreasing violence of his offenses, and his employment as a landscaper working 30 to 40 hours per week and making $25 to $30 per hour.

As the trial court stated that it read and considered both the motion and the probation report, the court is presumed to have considered all of these relevant factors

and was not required to recite them in its denial of defendant's motion. Defendant has not affirmatively shown that the court failed to consider the mitigating factors discussed above and that the motion would have been granted had the court taken them into account. The trial court did not abuse its discretion in denying defendant's *Romero* motion.

## IV.    Senate Bill No. 136

By way of supplemental briefing, defendant contends Senate Bill No. 136 applies retroactively to him and requires that his three prior prison term enhancements be stricken. The People concede and we agree.

Senate Bill No. 136 (2019−2020 Reg. Sess.) amended section 667.5, subdivision (b) to limit prior prison term enhancements to only prior terms that were served for a sexually violent offense as defined by Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) Defendant's three prior prison terms were served for assault with a deadly weapon (§ 245, subd. (a)(1)); driving in willful disregard (Veh. Code, § 28002, subd. (a)); and obstructing an officer (§ 69), driving away a vehicle (Veh. Code, § 10851, subd. (a)), possession of ammunition (§ 30305, subd. (a)(1)), and evading an officer (Veh. Code, § 2800.2, subd. (a)). None of his prior prison terms was served for a sexually violent offense, and thus they must all be stricken.

## DISPOSITION

Defendant's three 1-year prior prison term enhancements (§ 667.5, subd. (b)) are stricken. The trial court is directed to prepare an amended abstract of judgment and forward copies to the appropriate entities. In all other respects, the judgment is affirmed.

HILL, P. J.

25.

WE CONCUR:

FRANSON, J.

SMITH, J.