Filed 4/25/16  P. v. Downs CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B264131 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.  YA090103) |
| v. | |
| ANTOINE LAMONT DOWNS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan Honeycutt, Judge.  Affirmed.

Jonathan B. Steiner, Executive Director for California Appellate Project and Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Antoine Lamont Downs was convicted of being a felon in possession of a firearm and of carrying a loaded, unregistered handgun in a vehicle. On appeal, he contends the trial court erred in refusing to give a pinpoint instruction informing the jurors that his "mere presence" in the vehicle where the handgun was found was insufficient to establish constructive possession. We conclude the instructions given adequately addressed appellant's defense, and that the requested instruction would have been duplicative. We further conclude that based on the instructions given, the evidence presented and the arguments of counsel, there is no reasonable probability the jury based its verdict on appellant's mere presence. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by information with one count of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) and one count of carrying a loaded, unregistered handgun in a vehicle (Pen. Code, § 25850, subd. (a)).[1] As to both counts it was alleged that appellant was released on bail at the time of the commission of the offenses (§ 12022.1). It was further alleged that appellant had been convicted of two prior serious or violent felonies -- a robbery (§ 211) in California in 1999 and a bank robbery in Arizona in 2003 -- and also had suffered a prior conviction for drug possession (Health & Saf. Code, § 11350) in 2008.[2]

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     The prosecution elected to pursue the matter as a second strike case.

2

A.  *Evidence at Trial*

1.  *Prosecution Evidence*

On April 19, 2014, at 2:49 a.m., Los Angeles Sheriff's Department Deputy Kelly Marchello and her partner, Deputy James Moore, stopped a black El Camino after observing vehicle code violations.  Appellant was a passenger in the vehicle.  The driver and registered owner was Roy Renteron.  As Deputy Marchello approached the vehicle, she noticed an empty black holster behind the driver's seat.  The deputies detained appellant and Renteron, putting them in the patrol car.  Deputy Marchello, using a flashlight, conducted a more thorough search of the two-seat vehicle.  Behind the seats was a speaker box that ran along the back portion of the cab.  The deputy found a handgun inside the speaker box.[3]  The gun, a Sig Sauer 9 millimeter semi-automatic, was on the driver's side, within reach of either the passenger or the driver.  The grip was toward the driver.  The gun was loaded and had a bullet in the chamber.[4]

The gun's serial number identified it as having been purchased, registered and reported stolen by Theresa Weaver, appellant's aunt.  Weaver testified that she worked as a security guard.  In 2013, hoping to obtain a position as an armed security guard, she had legally purchased the handgun.  She kept the gun on a shelf above the closet in her bedroom, inside an unlocked case.  Appellant was a frequent visitor to Weaver's home.  In January 2014, there were a number of occasions on which appellant and other family members gathered there to celebrate family events.  Appellant knew Weaver had a gun, having seen her with it.

---

[3]     The deputy observed appellant throw a plastic cup out of the passenger window, and found an alcohol bottle in the center console of the vehicle.

[4]     A print specialist for the sheriff's department was unable to find identifiable fingerprints on the gun or the magazine.

3

According to Weaver, on February 9, 2014, when she arrived home from work, she noticed her bedroom window and the security bars that normally secured it were open. The gun and Weaver's iPod were missing, as well as a spare back door key that she kept on a hook in her kitchen. The apartment was otherwise undisturbed. Weaver went to the sheriff's station to report the stolen gun, and two deputies came to her home to investigate the burglary. Weaver also informed her landlord that someone had tampered with the window. Weaver testified she had last seen the gun on January 28, 2014. She denied having sold the gun to one of appellant's friends. She said she could easily have returned it to the store where she purchased it, as it was brand new and had never been loaded or fired.

2. *Defense Evidence*

On February 9, 2014, Deputy Erika Ortiz and her partner investigated the burglary reported by Weaver. Deputy Oritiz saw no evidence that the window or security bars had been tampered with, or any other indicia of a break in. The condition of the apartment and the window was consistent with someone having entered with a key. Weaver told Deputy Ortiz the break-in had occurred the day before, on February 8, and that the landlord had repaired the damage to the window in the interim. She also said that the firearm had been stored in a "safe" and that the safe had also been taken. Weaver did not mention any other missing items. She said she had last seen the gun on February 4, 2014.

Weaver's landlord testified that Weaver called him in January and February 2014 to report a problem with the security bars on her bedroom window. When he went to investigate, he saw no damage or need for repairs. He was able to re-secure the window by pushing in the rod that kept the bars in place and prevented entry through the window from the outside.

4

Sheila Weaver-Davis (Davis), Weaver's sister and another of appellant's aunts, was staying with Weaver during the month of February 2014. Davis and her husband slept in Weaver's bedroom because Weaver worked nights. Davis was in the apartment the day Weaver spoke to the deputies about the burglary.[5] Davis saw no evidence of a burglary while staying with Weaver, and Weaver never said one had occurred. Instead, Weaver told Davis she had sold her gun to "'one of [appellant's] homeboys,'" and that she was going to report it as stolen.

B. *Jury Instructions*

The jury was instructed in accordance with CALCRIM No. 2511 that to prove appellant guilty of unlawfully possessing a firearm in violation of section 29800, subdivision (a)(1), the People must prove that: "1. [he] possessed a firearm; [¶] 2. [he] knew that he possessed the firearm; [¶] and [¶] 3. [he] had previously been convicted of a felony."[6] The instruction further stated that "[t]wo or more people may possess something at the same time," and that "[a] person does not have to actually hold or touch something to possess it. It is enough if the person has (control over it or the right to control it), either personally or through another person."

The jury was instructed in accordance with CALCRIM No. 2530 that to prove appellant guilty of unlawfully carrying a loaded firearm in a vehicle in violation of section 25850, subdivision (a), the People must prove that: "1. [he] carried a loaded firearm in a vehicle; [¶] 2. [he] knew that he was carrying a firearm; [¶] and [¶] 3. [a]t that time, [he] was in a public place or on a public street in an incorporated city."

---

[5]     Weaver denied Davis was in her apartment when deputies arrived. Deputy Ortiz did not recall anyone else being present.

[6]     The parties stipulated that appellant was previously convicted of a felony.

The jury also was informed, in accordance with CALCRIM No. 251, that to find a person guilty of the charged crimes, it must find that the person intentionally committed the prohibited acts with a specific intent or mental state. The instruction stated that the specific intent/mental state required to establish the crime of possession of a firearm by a felon was "knowledge that he possessed the firearm" and that the specific intent/mental state required to establish the crime of carrying a loaded firearm in a vehicle was "knowledge that he was carrying a firearm."

Defense counsel asked the court to add to the CALCRIM No. 2511 instruction a statement that "mere presence is [in] and of itself not enough to establish constructive possession." The court declined the request, explaining: "It's a correct statement of the law, but I think that the instruction[] in and of itself discusses constructive possession. . . . I don't expect the People would argue mere presence is [in and] of itself sufficient to demonstrate constructive possession."

## C. *Closing Arguments*

In closing, the prosecutor discussed in detail the burglary described by Weaver. She contended the evidence established that appellant took the gun from Weaver's home in an "inside job," using a key to which he had access. Because "[appellant] knew where the keys were kept, knew his aunt had a gun, and later was caught in a car with a gun," there was "circumstantial evidence which support[ed] the conclusion that the defendant possessed the gun." She discussed the discrepancies in Davis's controverted testimony, including her claim that she was in Weaver's residence when Deputy Ortiz and her partner arrived to interview Weaver. The prosecutor stated: "This case is going to hinge on you determining that the defendant knew that the gun was there, and he had a right to control it. That's really the disputed fact here. We know the gun was in the car with the

6

defendant. [¶] But, you need to determine whether or not he knew the gun was there, and you think he had the right to control it."

Defense counsel challenged Weaver's testimony, noting the inconsistencies between it and Deputy Ortiz's testimony and Weaver's motive for denying she had illegally resold a firearm. Counsel identified as a threshold question whether the jury "believe[d] the gun was stolen out of Theresa Weaver's home in the first place." She noted that there had been "no testimony whatsoever as to whether [appellant] knew, or should have known[,] that the weapon was in the car. She emphasized that "[t]he mere fact that he's there, his mere presence in the car is not in and of itself enough to establish his control over that weapon," and that "[t]he issue of possession" was "very very important": "That's the question. Was [appellant] in possession of that weapon? Simply by the fact he was in the car. And nothing has been established that he was in control of anything in the car . . . [Appellant] was simply a passenger in the vehicle. . . . being at the wrong place at the wrong time with the wrong person." She concluded by arguing that "nothing there . . . points toward [appellant] other than mere presence. And mere presence is not enough."

In rebuttal, the prosecutor did not suggest appellant's "mere presence" proved his guilt. As she explained: "The evidence that the gun was taken from [Weaver's] home [] was presented to you because it's circumstantial evidence that [appellant] had access to the gun, he knew where the gun was. . . . [¶] . . . [¶] Those are the facts . . . that support the fact that he knew where the gun was, that he had control over the gun." The majority of the prosecutor's rebuttal was geared toward persuading the jury to credit Weaver's testimony over Davis's. In concluding, the prosecutor stated: "Now, there's one element in dispute here. Did [appellant] know the gun was there, and did he have the right to control it? . . . And we know he had the ability to control it, because this is his aunt's gun. . . . [¶] . . . . He knew

7

where the keys were. He was at his aunt's house numerous times in January when the weapon was taken. And then lo and behold, given all those factors this gun pops up in a car with him, a foot away from him. And these factors substantiate the fact that that element has been proven, and that element has been proven beyond a reasonable doubt, based on the circumstantial evidence . . . ."

D. *Verdict and Sentencing*

The jury found appellant guilty on both counts, and the special allegation that he was not the registered owner of the firearm to be true. The court adjudicated the priors and found them true. However, it found insufficient evidence to support that appellant was released on bail on another case when the underlying offenses occurred. The court sentenced appellant to two years, four months, consecutive to a 12-year sentence that had been ordered in another case, and imposed various fines. This appeal followed.

**DISCUSSION**

Section 29800, subdivision (a)(1) provides that a person who, having been convicted of certain felonies, "owns, purchases, receives, or has in possession or under custody or control any firearm" is guilty of a felony. "The elements of this offense are conviction of a felony and ownership or knowing possession, custody, or control of a firearm." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1029 [citing the predecessor statute, former § 12021, subd. (a)(1)].) Committing the offense of carrying a loaded firearm in violation of section 25850, subdivision (a) similarly requires knowing possession, custody or control. (See *People v. Rubalcava* (2000) 23 Cal.4th 322, 331-332; CALCRIM No. 2530.) "Possession may be either actual or constructive as long [as] it is intentional." (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 130.) "A defendant has actual possession when

8

the weapon is in his immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. [Citations.]" (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084.) "But mere proximity to the weapon, standing alone, is not sufficient evidence of possession." (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417; see also *People v. Land* (1994) 30 Cal.App.4th 220, 225 [something more than mere presence near stolen property or access to its location must be shown to establish possession, but "'the necessary additional circumstances'" may be "'rather slight'"].)

Appellant does not contest the sufficiency of the evidence to support his convictions. His sole contention on appeal is that the trial court's refusal to give his requested pinpoint instruction that "'mere presence is [in] and of itself . . . not enough to establish constructive possession'" denied him due process and was otherwise reversible. For the reasons discussed, we disagree.

Pinpoint instructions "'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case.'" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) "Upon proper request, a defendant has a right to an instruction pinpointing the theory of defense. . . . if the theory proffered by the defendant is supported by substantial evidence" (*People v. Randolph* (1993) 20 Cal.App.4th 1836, 1841), the instruction is a correct statement of the law (*People v. Bivert* (2011) 52 Cal.4th 96, 120), and the proposed instruction does not simply highlight specific evidence the defendant wishes the jury to consider. (*People v. Wright* (1988) 45 Cal.3d 1126, 1137.)

The trial court may properly refuse an instruction highlighting a defense theory if it is "duplicative or potentially confusing." (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1276.) "[W]here standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is

9

properly refused." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 857; see, e.g., *People v. Gonzales*, *supra*, 54 Cal.4th at p. 1276 [trial court did not err in refusing to instruct jury that "a person is not guilty of murder simply because he or she failed to stop someone else from committing a murder" where topic was covered by standard aiding and abetting and child endangerment instruction and "giving two different instructions on the same topics would risk confusing the jury"].) Put another way, "[t]here is no error in a trial court's failing or refusing to instruct on one matter, unless the remaining instructions, considered as a whole, fail to cover the material issues raised at trial." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 277.) The failure to give an instruction on even an essential issue "may be cured if the essential material is covered by other correct instructions properly given." (*Ibid.*) "'"In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.["] [Citation.]'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

Giving the requested pinpoint instruction was unnecessary, and would have been duplicative. The jury already had been instructed in accordance with CALCRIM Nos. 2511 and 2530 that the defendant's possession must be knowing, and under CALCRIM No. 251 that proving the offenses required the prosecution to establish appellant's "knowledge" that he possessed or was carrying the firearm. Defense counsel argued that mere presence was not sufficient to establish guilt, and the prosecutor did not suggest it was. Thus, there was no danger the jury would believe that appellant's mere presence in a vehicle with a gun established his guilt.

Moreover, in reviewing a claim of instructional error, we consider the jury instructions in the context of the entire trial record. (*People v. Dieguez*, *supra,* 89

10

Cal.App.4th at p. 276.) "[W]e will not set aside a judgment on the basis of instructional error unless, after an examination of the entire record, we conclude the error has resulted in a miscarriage of justice," viz., "when it is reasonably probable that the jury would have reached a result more favorable to the appellant absent the error." (*Id.* at pp. 277-278; see *People v. Earp* (1999) 20 Cal.4th 826, 887 [evaluating trial court's alleged error in failing to give proposed pinpoint instruction under the *People v. Watson* (1956) 46 Cal.2d 818 standard:  whether it was "reasonably probable that had the jury been given [the] proposed pinpoint instruction, it would have come to [a] different conclusion".)

The record as a whole establishes that the court's failure to give the instruction did not affect the result of the trial.  There was no dispute that the gun found in the El Camino had been purchased and registered by Weaver.  The central issue at trial was how the gun got into the vehicle:  whether appellant took it from Weaver's bedroom or Weaver sold it to one of appellant's "homeboys."  Much of the prosecution's case was spent developing the evidence supporting Weaver's account.  The defense was devoted entirely to discrediting Weaver.

Counsels' arguments to the jury reflected the significance of this evidence to appellant's guilt.  Both the prosecutor and defense counsel emphasized that appellant's knowledge that the gun was present in the El Camino and his right to control it were necessary to establish his guilt, and that the determination of those issues hinged on Weaver's credibility.  The prosecutor could not have been clearer.  Immediately after defense counsel concluded her argument by emphasizing that "mere presence is not enough," the prosecutor explained:  "The evidence that the gun was taken from [Weaver's] home . . . was presented to you because it's circumstantial evidence that he had access to the gun, he knew where the gun was. . . . [¶] . . . [¶] . . . Those are the facts . . . that support the fact that he knew where the gun was, that he had control over the gun."  In view of the manner in which the

11

evidence and argument were presented to the jurors, they could not have been confused about the significance of appellant's knowledge of and control over the gun; nor could they have based their verdict on his mere presence in the vehicle. Thus, even had we found error in failing to give the proposed pinpoint instruction, we would deem it harmless.[7]

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.

---

[7] Appellant cites *U.S. v. Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196 and *Bradley v. Duncan* (9th Cir. 2002) 315 F.3d 1091 for the proposition that failure to instruct on the defendant's theory of the case amounts to denial of the right to a fair trial and is reversible per se. In those cases, the Ninth Circuit found, after considering the instructions as a whole and the arguments of counsel, that the instructions were inadequate, and the jury could have improperly convicted the defendants. (*U.S. v. Escobar de Bright*, *supra*, 742 F.2d at p. 1201; *Bradley v. Duncan*, *supra*, 315 F.3d at pp. 1098-1099.) For the reasons discussed, that is not the case here.